UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARYL L. LAVENDER,

                    Plaintiff,

vs.                                Case No.  2:10-cv-702-FtM-29SPC

TIMOTHY  BUDZ;  RON  LAWRENZ;  D.
COLEMAN;  NATASHA  JOHNSON;[1]  GEORGE
EMANOILIDUS;  KATJA  HAASE;  DR.
JACQUES LAMOUR; SUZANNE KLINE; FLA.
DEPT.  OF  CHILDREN  AND  FAMILIES;
FLORIDA CIVIL COMMITMENT CENTER; GEO
CARE, GEO GROUP, INC.,

                    Defendants.
_____


## OPINION AND ORDER

        This matter comes before the Court upon review of the Motion

to  Dismiss  (Doc.  #44,  Motion)  filed  on  behalf  of  Defendants

Emanoilidus, Haase, Johnson, Coleman, Lawrenz, Budz, FCCC, and Geo

Care Group, Inc.  Plaintiff filed a response in opposition (Doc.

#45, Response).[2]  This matter is ripe for review.

### I.  Facts

        Plaintiff Daryl Lavender, proceeding *pro se*, initiated this

action as a civil detainee at the Florida Civil Commitment Center

("FCCC") by filing a Civil Rights Complaint (Doc. #1, Complaint)

_____

        [1]Defendants  note  that  Plaintiff  incorrectly  named  "Price"
Johnson as a Defendant.  See Motion at 1.  Defendant Price's
correct first name is "Natasha."  Id.

        [2]Plaintiff attaches exhibits to his Response.  The Court does
not consider these exhibits when ruling on Defendants' 12(b)(6)
Motion.

pursuant to 42 U.S.C. § 1983. Plaintiff attached supporting exhibits to his Complaint. See Doc. #1-1, Exhs. Plaintiff names the following Defendants in their individual and in their "professional" capacity: Timothy Budz, Facility Administrator; Ron Lawrenz, Assistance Facility Administrator-Security; D. Coleman, Captain of Security; Price Johnson, Unit-Manager (Waters Wing) Gulf Dorm; George Emanoilidus, Director Clinical Program Services; Katja Haase, Clinical Team Leader (Waters Wing) Gulf Dorm; Dr. Jacques Lamour, Primary Infirmary (Medical) Physician; Suzanne Kline, Current Director of the SVP Program. Complaint at 1, 6-8.

Plaintiff alleges a retaliation claim under the First Amendment and a deliberate indifference to a serious medical condition claim under the Fourteenth Amendment. See generally Complaint. The gravamen of the Complaint stems from Plaintiff's May 2010 relocation, when Plaintiff was moved from the Dublin Dorm to the Gulf Dorm at the FCCC, and was not assigned to a bottom bunk. Id. at 12-13. Plaintiff asserts that his constitutional rights were violated because he was assigned to a top bunk, but he required a bottom bunk due to his medical condition. Plaintiff also claims that he was provided inadequate medical treatment for an injury he sustained after falling from the top bunk, and a contends that he was retaliated against because he filed a grievance regarding the matter. See id.

**Low Bunk Pass**

Plaintiff states that sometime in May 2010, he agreed to a transfer to the Gulf Dorm, but unbeknownst to him, he was assigned to a top bunk. Id. at 13. Plaintiff alleges that he has a "degenerative disc disease or serious and extensive back and neck pain and problems," for which he previously had a low bunk pass that expired on November 4, 2009. Id.; Doc. #1-1 at 10. Thus, when Plaintiff was assigned a top bunk in Gulf Dorm, he "immediately" completed a sick call request asking for a "renewed [bottom bunk] pass" on May 16, 2010.[3] Complaint at 13. On June 1, 2010, Plaintiff states Nurse L. Cassels issued him a low bunk pass. Id. at 14. That same day, Plaintiff alleges he forwarded his low bunk pass to Defendant Dr. Emanoilidus. Id.

Approximately two weeks later, Plaintiff claims he was still not assigned a low bunk, so he raised the issue with Defendant Haase, the FCCC Clinical Staff Team Leader for Gulf Dorm residents. Id. Defendant Haase told Plaintiff that "we do not have any bottom bunks to put you in and many residents have been waiting (and on a waiting list) for a bottom bunk, long before you were moved over here." Id. at 15. Plaintiff states that he informed Defendant Haase that he had a "medical urgency" and would be initiating grievance proceedings in the matter to which the Defendant replied,

---

[3]Plaintiff fails to specify the date he was moved to the Gulf Dorm. Plaintiff does specify that he sought a renewed bunk pass on May 16, 2010.

"if you pursue this issue on a grievance in Gulf dorm you will be moved back to an open dorm where you came from."  Id.

Sometime during the third week of June, Plaintiff alleges that he mentioned his low bunk issue to Defendant Johnson, but Johnson informed him that she had "nothing to do with the moves or resident housing problems."  Id.  Plaintiff claims that he raised the issue again with Defendant Emanoilidus, who informed him that Captain Coleman was the security staff person responsible for moving residents.  Id. at 15-16.  On July 14, 2010, Plaintiff was lowering himself down from the top bunk, and "slammed into the concrete floor," resulting in a broken toe.  Plaintiff contends that his fall was a result of not being assigned a low bunk.  Id. at 16.

Plaintiff continued to ask for a low bunk assignment.  Id. at 17.  On August 23, 2010, Plaintiff states that he wrote a "formal grievance" about his bottom bunk pass not being honored by the staff.  Id. at 18.  On September 13, 2010, at approximately 7:30 a.m. in the morning, Plaintiff states that security staff informed him that he was on the "move list" and would be relocated to the "Madrid Dorm" in the "Europe section" of the facility that day. When Plaintiff arrived at his new dorm assignment, he was assigned to a low bunk, but due to a disagreement he previously had with one of the other resident-occupants of the dorm, he was transferred to a different room and provided with a low bunk.  Id. at 19-20.

**Broken Toe**

Plaintiff next claims that he received constitutionally inadequate medical care for his broken toe. Id. at 16. At 1:00 p.m. on July 14, 2010, Plaintiff states he declared a "medical emergency" and went to the Medical Department, where he states a "Musculosketetal Pain Protocol was filled out and placed in [his] medical file." Id. The next day, July 15, Plaintiff again declared a medical emergency and received a "call out" for an x-ray on July 16. On July 16, Plaintiff had an x-ray of his left foot. Id. On August 13, 2010, Plaintiff was permitted to review his medical files and for the first time he learned that he had broken his toe when he fell. Id. at 17. On August 16, Plaintiff received a medical call out, during which his toe was splinted and another x-ray was scheduled for the following day. Id. at 18. On August 18, Plaintiff had another x-ray of his toe. Id. On August 27, Plaintiff was informed that the August 18th x-ray revealed that his toe was healing, and that it would not be necessary to re-break the toe to splint it. Id. at 19. Plaintiff blames Defendant Lamour for reviewing the radiology report on his fractured toe and failing to consult with him further about his toe. Id. at 10. As a result, Plaintiff claims that Dr. Lamour's action or inactions amount to "constitutionally inadequate medical care." Id.

## II.  Standard of Review[4]

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Thus, the Court must accept all factual allegations in Plaintiff's Amended Complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1951 (2009)(discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable

---

[4]Defendants entitle their pleading as a "Motion to Dismiss," but state that they file the instant Motion pursuant to § 1915(e)(2)(b)(ii) based on the Complaint's failure to state a claim. The Court construes the Motion to be filed pursuant to Fed. R. Civ. P. 12(b)(6).

expectation that discovery will reveal evidence" that supports the
plaintiff's claim.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
556 (2007);  Marsh, 268 F.3d at 1036 n.16.  Specifically, "[w]hile
a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations . . . a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  Id. at 555 (citations
omitted).  Thus, "the-defendant-unlawfully harmed me accusation" is
insufficient.  Ashcroft, 129 S. Ct. at 1949.  "Nor does a complaint
suffice if it tenders naked assertions devoid of further factual
enhancement."  Id.

A complaint must satisfy the pleading requirements of Fed. R.
Civ. P. 8 by simply giving the defendant fair notice of what the
plaintiff's claims are and the grounds upon which they rest.
Conley v. Gibson, 355 U.S. 41 (1957).  However, the "[f]actual
allegations must be enough to raise a right to relief above the
speculative level."  See Twombly, 550 U.S. 544, 127 S. Ct. 1955,
1965, 1968-69 (citations omitted).  Additionally, there is no
longer a heightened pleading requirement.  Randall, 610 F.3d at
701.

## III.  Applicable Law & Findings

### A.  Section 1983

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

At the outset, Plaintiff also names the FCCC and the Florida Department of Children and Families as Defendants.  See Complaint. Defendants submit that it appears Plaintiff is attempting to attribute liability on Defendants based on respondeat superior. Motion at 14.  Defendants argue that the FCCC should be dismissed because Plaintiff has not alleged that a policy set forth by the FCCC was the "moving force" that caused his constitutional rights to be violated.  Motion at 14-15.

The Court finds Defendants FCCC and the Florida Department of Children and Families are subject to dismissal because neither the FCCC, or the Florida Department of Children and Families constitute "persons" subject to § 1983 liability. Therefore, Defendants FCCC and Florida Department of Children and Families are dismissed. The Court now turns to address Plaintiff's claims.

**B. Deliberate Indifference Claims**

The Court recognizes that the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). Instead, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). See also Lavender v. Kearney, 206 F. App'x 860, 862 (11th Cir 2006). Indeed, the Court recognizes that residents at the FCCC are afforded a higher standard of care than those who are criminally committed. See id. (wherein the Eleventh Circuit Court of Appeals held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Nonetheless, "the Eighth Amendment's deliberate indifference jurisprudence is applicable to the Fourteenth Amendment due process rights of pre-trial detainees." Id. at 863 n.2 (citing Purcell v. Toombs County, Ga., 400 F.3d 1213, 1219 (11th Cir. 2005)(other citations omitted)). Consequently, the Court examines cases addressing medical deliberate indifference claims under the Eighth Amendment for guidance in evaluating Plaintiff's claims.

A pre-trial detainee alleging a constitutional deliberate indifference claim "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" Harper v. Lawrence County, Ala., 592 F.3d. 1227, 1233 (11th Cir. 2010)(quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)(footnote omitted)). "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either situation, "the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citing Taylor, 221 F.3d at 1258)(alteration in original). To establish "deliberate indifference" the plaintiff must establish that Defendants "(1) had sufficient knowledge of a risk of serious harm; (2) disregarded

that risk; and, (3) acted with more than gross negligence."
Harper, 592 F.3d at 1233 (citations omitted). Further, the
plaintiff must show that it was the "Defendant's conduct" that
"caused [Plaintiff's] injuries." Id.

To establish "sufficient knowledge," a Defendant "'must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and [ ] must also draw the
inference.'" Id. (quoting Bozeman v. Orum, 422 F.3d 1265, 1272
(11th Cir. 2005)). "[I]mputed or collective knowledge cannot serve
as the basis for a claim of deliberate indifference. Each
individual Defendant must be judged separately and on the basis of
what that person knows." Burnette, 533 F.3d at 1331.

Further, a plaintiff must allege that the Defendant
disregarded the risk of serious harm to the plaintiff with conduct
that rises beyond negligence. Marsh v. Butler County, Ala., 268
F.3d 1014, 1027 (11th Cir. 2001). "Deliberate indifference" can
include "the delay of treatment for obviously serious conditions
where it is apparent that delay would detrimentally exacerbate the
medical problem, the delay does seriously exacerbate the medical
problem, and the delay is medically unjustified." Taylor v. Adams,
221 F.3d 1254, 1259-60 (11th Cir. 2000) (internal quotation omitted).
Whether the delay was tolerable depends on the nature of the
medical need and the reason for the delay. Farrow v. West, 320
F.3d 1235, 1247 (11th Cir. 2003). Further, the tolerable length of

delay in providing medical attention depends on the nature of the medical need and the reason for the delay.  Id.

The Court accepts as true all of the Plaintiff's allegations in the Complaint.  Liberally construing the Complaint, Plaintiff alleges a deliberate indifference claim against Defendants Haase, Emanoilidus, and Johnson related to the failure to assign Plaintiff a low bunk in the Gulf Dorm, and a deliberate indifference claim against Defendant Doctor Lamour for inadequate treatment for Plaintiff's broken toe.

## 1.  Defendants Emanoilidus, Haase, Johnson, & Coleman

Plaintiff attributes liability on Defendants Emanoilidus, Haase, Johnson, and Coleman stemming from his failure to have a low bunk assignment when he was moved to the Gulf Dorm in May 2010. Complaint at 8.  Plaintiff contends that Defendants acted with "total reckless disregard to the fact that a medical order for a bottom bunk only was present in [P]laintiff's medical/clinical file."  Id.

According to the Complaint, Defendant Coleman is responsible for moving residents and Defendants Emanoilidus, Haase, and Johnson do not partake in inmate moves.  See Complaint at 16 (stating Captain Coleman is the security staff responsible for moving residents).  Thus, there is no causal connection between Defendants Emanoilidus, Haase, and Johnson and Plaintiff's transfer to the

Gulf Dorm, or request for a low bunk after he moved to the Gulf Dorm.

Further, even if there was a causal connection between Defendants Emanoilidus, Haase, and Johnson and Plaintiff's top bunk assignment, Plaintiff's exhibits attached to his Complaint reveal that Plaintiff's low bunk pass, which was written due to Plaintiff's "chronic neck pain," <u>expired</u> on November 4, 2009, approximately six months <u>before</u> he moved to the Gulf Dorm. Thus, as evidenced by the exhibits attached to Plaintiff's Complaint, when Plaintiff moved to the Gulf Dorm there was no medical pass in effect showing that Plaintiff required a low bunk. Plaintiff apparently recognized the need to have his medical pass renewed, because on May 16, 2010, shortly after he was moved to Gulf Dorm and assigned a top bunk, he submitted a sick call slip asking for a "renewed bottom bunk pass." On June 1, 2010, Plaintiff was issued a low bunk pass by Nurse Cassels.

Despite Plaintiff being issued a low bunk pass on June 1, 2010, Plaintiff was not provided a low bunk until September 12, 2010. According to the Complaint and exhibits attached thereto, however, the delay is directly attributable to the fact that there were no low bunks available in the Gulf Dorm, that there was a waiting list for low bunks in that dorm, and Plaintiff <u>only</u> wanted a low bunk in the Gulf Dorm. Plaintiff submitted his first resident grievance concerning Defendants' failure to honor his low

bunk issue on August 23, 2010, more than a month after he broke his toe. Within two weeks from the date he filed the grievance, Plaintiff was moved to a different dorm where he was assigned a low bunk. Accordingly, based on the allegations of the Complaint and the exhibits attached thereto, the Court finds the Complaint fails to state a constitutional claim as to Defendants Emanoilidus, Haase, Johnson, and Coleman.

## 2. Doctor Lamour

Plaintiff alleges Doctor Lamour rendered constitutionally deficient medical care for his broken toe because he did not tell Plaintiff his toe was broken, did not provide him with a wheel chair, or crutches, and failed to provide Plaintiff with a toe splint. In Response, Defendants argue that the Complaint fails to state a claim because the Complaint only alleges that Plaintiff experienced pain for two days, during which time Plaintiff's condition was evaluated by the Medical Department. See Response

According to the Complaint, Plaintiff went to the Medical Department on July 14, 2010, the same day he experienced the injury to his toe, was provided an ice pack, pain pills, and was scheduled for an x-ray, which took place two days later. See supra at 4-5; Response at 6. According to the Complaint, Plaintiff did not seek treatment again for his toe for approximately a month. On August 13, 2010, Plaintiff reviewed his own medical record and learned that he had broken his toe. On August 16, Plaintiff went to the

Medical Department again, his toe was splinted, and he was scheduled for another x-ray, which was completed 2 days later. The subsequent x-ray revealed that Plaintiff's toe was healing and that there was no need for a splint.

Based on the foregoing, the fact that the Medical Department failed to tell Plaintiff the result of the x-ray amounts to negligence at most. When Plaintiff initially sought medical treatment, he was evaluated, provided ice, provided pain medication, and scheduled for an x-ray. The fact that Plaintiff thinks he should have been given a toe splint earlier and provided with crutches or a wheelchair for his broken toe, demonstrates only a difference in opinion about treatment. See Linares v. Armour Corr. Health Serv., Inc., 385 F. App'x 926, 928 (11th Cir. 2010)(citing Adams v. Poag, 61 F. 3d 1537, 1545 (11th Cir. 1995)(whether defendants' "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Hamm v. DeKalb Co., 774 F.2d 1567, 1575 (11th Cir. 1985)(concluding that, where an inmate regularly was examined and treated and the dispute centered on adequacy of treatment, no constitutional violation exists)). The last x-ray revealed that Plaintiff's toe was healing properly. Thus, Plaintiff has not alleged a serious medical need for a splint for his toe, a wheelchair, or crutches. See Linares, 385 F. App'x

at 926 (finding no serious medical need when inmate was not provided with a splint for his broken finger); <u>Alls v. Correct Health, Inc.</u>, 1:11-cv-2977-TWT-AJB, 2011 WL 6371905 (N.D. Ga. Nov. 21, 2011)(finding that the failure to provide a splint for a broken finger, not a compound fracture, did not amount to deliberate indifference). Nor does the Complaint allege that a delay in providing the splint, exacerbated Plaintiff's condition. Instead, the record shows that Plaintiff's toe healed. Accordingly, Defendant Lamour's Motion to Dismiss is granted.[5]

## C. Retaliation Claim

Plaintiff alleges that Defendant Haase "threatened" him that if he wrote a grievance about his failure to be provided a low bunk, that he would be sent back to an open dorm. Plaintiff claims that this shows that Defendant Haase "retaliated" against him. Plaintiff further claims that Defendant Budz conspired with Ms. Haase as evidenced by Budz' response to Plaintiff's resident grievance. Complaint at 9 (citing Exh. A).

Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. <u>Wright v. Newsome</u>, 795 F.2d

---

[5]Plaintiff also alleges inadequate medical care due to: (1) the delay Plaintiff encountered in receiving a flu shot, despite the FCCC informing him that they had no serum; (2) failure to properly treat his jock itch; and, (3) delay in treating a cold he experienced in October 2010. Complaint at 20. These allegations are unrelated to the incidents at issue <u>sub</u> <u>judice</u>. Nevertheless, the Court finds these allegations fail to state a deliberate indifference claim.

964, 968 (11th Cir. 1968)(per curiam).  To prevail on a retaliation
claim, the inmate must establish that: (1) his speech was
constitutionally protected; (2) the inmate suffered adverse action
such that official's allegedly retaliatory conduct would likely
deter a person of ordinary firmness from engaging in such speech;
and (3) there is a causal relationship between the retaliatory
action and the protected speech.  O'Bryant v. Finch, 637 F.2d 1207,
1212 (11th Cir. 2011)(internal quotations omitted); Moton v.
Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011).  "To establish
causation, the plaintiff must show that the defendant was
'subjectively motivated to discipline' the plaintiff for exercising
his First Amendment rights."  Moton, 631 F.3d at 1341 (quoting
Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).

## 1.  Defendants Budz and Haase

The Complaint fails to state a retaliation claim as to
Defendants Haase, or Budz.  According to the Complaint, the only
involvement Defendant Budz had with the incident was responding to
Plaintiff's grievance pertaining to Plaintiff's claims that the
FCCC officials' failed to honor his low bunk pass.  In response to
Plaintiff's grievance, Defendant Budz told Plaintiff:

> There are 448 lower bunks in Europe & Planets.  Your
> request to have lower bunk in Waters is denied.  You will
> be moved to a lower bunk in Planets/ Europe by 9/17/10 to
> meet your stated need.

Doc. #31-1 at 3. Likewise, Plaintiff's allegations that Defendant Haase retaliated against Plaintiff because she "threatened" to move him if he filed the grievance are conclusory. Taken in context, Defendant Haase merely explained to Plaintiff that there was a waiting list for a low bunk in the Gulf Dorm, but there were low bunks available in the other dorms. The Court recognizes that the filing of a grievance is protected activity under the First Amendment. However, there is no casual connection here between Plaintiff's grievance requesting a low bunk and the alleged retaliatory action. The Complaint and exhibits attached thereto show that Plaintiff's transfer to a different dorm, where he was assigned a low bunk, was not done in retaliation, but instead was done to accommodate Plaintiff's request for a low bunk. Based on the foregoing, the Court finds the Complaint fails to state a retaliation claim and the Defendants' Motion is granted.

## D. Other Claims

Plaintiff also claims that the FCCC has no daily operating procedures in effect. Complaint at 10, 21. As an example, Plaintiff refers to his situation with the bottom bunk pass. Id. at 10. Plaintiff states that Defendant Kline is "duly responsible" for compliance with the Florida Administrative Procedures Act and is the person responsible for promulgating policy and daily operating rules governing the FCCC. Id. at 10. Plaintiff also attributes blame to Defendants Budz and Lawrenz due to their

administrative positions for failing to have formulate and enforce procedures and rules at the FCCC. <u>Id.</u>

The Court cannot discern of a constitutional violation based upon these allegations. Nonetheless, Plaintiff's allegations refute his contention that there are no rules or regulations at the FCCC. Indeed, it is clear from the Complaint and exhibits attached thereto that Plaintiff had previously been issued a low bunk pass, which had expired. When Plaintiff realized the pass expired, he made an appointment with the Medical Department and he was issued a new low bunk pass. Thus, Plaintiff's example reveals an implementation of policies or procedures at the FCCC. Moreover, the Court is aware from its own docket that the FCCC <u>does</u> have policies and procedures in effect that govern the operation of facility. <u>See</u> <u>generally</u> <u>Cannupp v. Secretary Dep't of Children & Families</u>, Case No. 2:04-cv-260-FtM-99DNF. Plaintiff does not have a constitutionally protect interest in a grievance procedure. <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1177-78 (11th Cir. 2011). Lastly, to the extent the Court does not address any of Plaintiff's other claims, the Court finds the claims fail to state a constitutional violation.

Also pending before the Court is Plaintiff's "application for an injunctive temporary restraining order prohibiting retaliative actions" and a request for a hearing on said motion. <u>See</u> Docs. #50, #51. Plaintiff's motion for a temporary restraining order

does not relate to any incident in the case <u>sub judice</u>.  Instead, Plaintiff takes issue with a two-day delay he encountered when attempting to mail legal mail.  Doc. #50 at 2.  Plaintiff disputes that he did not have enough postage on the envelope, and asserts that the mail room employees are incompetent.  <u>Id.</u>  Plaintiff seeks a temporary restraining order to prohibit any further retaliation.  <u>Id.</u>

The Court will deny the Motion because it is clear that Plaintiff has not complied with the requirements of either Fed. R. Civ. P. 65(b) or Local Rule 4.05(b)(M.D. Fla.).  Plaintiff has not demonstrated a threat of an immediate and irreparable injury or loss, nor has he posted security, or explained why security should not be posted.  Further, Plaintiff has not established the four prerequisites mandated by the Eleventh Circuit to warrant the issuance of either a temporary restraining order or preliminary injunctive relief.  <u>Parker v. State Bd. of Pardons & Paroles</u>, 275 F.3d 1032, 1034-35 (11th Cir.) (<i>per curiam</i>), <u>cert. denied</u>, 534 U.S. 1072 (2001).  <u>Wall v. Ferrero</u>, 142 F. App'x 405 (11th Cir. 2005).

ACCORDINGLY, it is hereby

**ORDERED:**

1.  The Motion to Dismiss (Doc. #44, Motion) filed on behalf of Defendants Emanoiudis, Haase, Johnson, Coleman, Lawrenz, Budz, FCCC, and Geo Care Group, Inc. is **GRANTED**.  This case is **dismissed** as to all Defendants.

2.   Plaintiff's "application for an injunctive temporary restraining order prohibiting retaliative actions" and motion for a hearing (Docs. #50, #51) are **DENIED.**

3.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this ___15th___ day of February, 2012.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record